IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

MICHAEL SHAVER,                        : Civil No. 1:25-CV-77
                                       :
     Plaintiff,                        :
                                       :
        v.                             :
                                       : (Chief Magistrate Judge Bloom)
FRANK BISIGNANO,                       :
Commissioner of Social Security,[1]    :
                                       :
     Defendant.                        :

## MEMORANDUM OPINION

### I.   Introduction

Michael Shaver filed an application under Title II of the Social

Security Act for disability and disability insurance benefits on April 23,

2021.[2]  Following a hearing before an Administrative Law Judge ("ALJ"),

the ALJ found that Shaver was not disabled from his alleged onset date

of September 23, 2019, through June 6, 2022, the date of the ALJ's

decision.[3]  The Appeals Council denied review, and Shaver appealed the

---

[1] Frank Bisignano became the Commissioner of Social Security on
May 7, 2025. Pursuant to Rule 25(d) of the Federal Rules of Civil
Procedure and 42 U.S.C. § 405(g), Bisignano is substituted as the
defendant in this suit.
[2] Tr. 181-83.
[3] Tr. 20-36.

decision to the District Court.[4]  The Court remanded the matter back to an ALJ for reconsideration.[5]  Shaver had another hearing before an ALJ, and following that hearing, the ALJ published his decision finding that Shaver was not disabled from his alleged onset date of disability of September 23, 2019, through October 28, 2024, the date of that decision.[6]

Shaver now appeals this decision, arguing that the ALJ's decision is not supported by substantial evidence.  After a review of the record, and mindful of the fact that substantial evidence "means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion,'"[7] we conclude that substantial evidence supports the ALJ's findings in this case.  Therefore, we will affirm the decision of the Commissioner denying this claim.

## II.   Statement of Facts and of the Case

Michael Shaver filed for disability and disability insurance benefits, alleging disability due to partial blindness in the right eye, strokes, high

---

[4] Tr. 1-4.
[5] Tr. 1867-68.
[6] Tr. 1789-1806.
[7] *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019).

blood pressure and cholesterol, depression, a pelvic crush injury, injury to his lower extremities, three cracked vertebrae in the lower back, right side numbness, and chronic pain.[8]  Shaver was 43 years old at the time of his alleged onset of disability, had at least a high school education, and had no past relevant work.[9]

The medical record regarding Shaver's impairments[10] revealed that in October of 2018, Shaver suffered a stroke causing mild residual right sided numbness.[11]  On July 15, 2019, Shaver presented to the emergency department unresponsive with agonal breathing, ashen skin, central cyanosis, and perpetual vomiting after working outside in the heat.[12] Shaver obtained an emergency head and neck CT, MRI, and EEG, which revealed no new abnormalities.[13]  The next day, Shaver reported negative

---

[8] Tr. 224.

[9] Tr. 1804.

[10] Because Shaver's appeal focuses on the ALJ's treatment of evidence related to his physical impairments, we will forego discussion and analysis of Shaver's mental health records and evaluations.

[11] Tr. 495, 688, 690.

[12] Tr. 845-49.

[13] Tr. 848-49.

symptoms altogether.[14] Treatment notes indicated the episode was likely caused by dehydration.[15]

On September 23, 2019, Shaver incurred a work-related injury where he was pinned between the bucket and tire of a backhoe.[16] He presented to the emergency department where pelvic X-rays and chest and spine CTs revealed a bilateral superior and inferior pubic rami fracture, a vertical fracture through the central sacrum and widening at the left sacroiliac joint, and L4-L5 transverse process fractures.[17] An MRI of the lumbar spine did not show cord compression or any new injuries.[18] Shaver underwent a percutaneous placement of a transsacral transiliac screw and a left anterior column screw.[19] He was prescribed physical therapy sessions, which he attended from October of 2019 to May of 2020.[20] Shaver's progress was noted as fair and his tolerance to

---

[14] Tr. 850.
[15] Tr. 857.
[16] Tr. 687-90.
[17] *Id.*
[18] Tr. 1716.
[19] Tr. 700-01.
[20] Tr. 750, 1741-81, 2629-2968.

treatment was noted as good.[21]  He was discharged due to a plateau in progress.[22]

At a January 2020 follow-up visit with Dr. J. Spence Reid, Shaver reported significant pain throughout his pelvis but denied taking any medications for relief.[23]  He claimed an inability to stand or walk for any period of time.[24]  Physical examination showed obvious discomfort when standing, a slow and bilaterally antalgic gait, tenderness to palpation diffusely around the pelvic ring, and pain with the squeeze of the iliac wings.[25]  X-rays of the pelvis showed intact hardware without signs of loosening or displacement and continued healing at the fracture site.[26] Dr. Reid noted Shaver could be more aggressive in his rehabilitation and directed him to transition to a work hardening program in physical therapy.[27]  He further recommended taking Tylenol as needed.[28]

---

[21] Tr. 2661, 2685, 2722, 2727, 2741, 2745, 2750, 2760, 2773, 2777.
[22] Tr. 2637.
[23] Tr. 633.
[24] *Id.*
[25] *Id.*
[26] *Id.*
[27] Tr. 634
[28] *Id.*

In March of 2020, Shaver received a steroid and anesthetic injection of the symphysis pubis joint after complaints of ongoing pain.[29]   He continued to report pelvic pain and difficulty with functional mobility over the next few months.[30]   Shaver underwent an independent medical evaluation with Dr. Paul Horenstein in May of 2020.[31]   Dr. Horenstein reviewed Shaver's imaging which showed no loosening of hardware, no evidence of hip joint space abnormalities, no hip arthritis or hip subluxation bilaterally, healing fractures of both the superior and inferior rami as well as hardware fixation, and no evidence of nonunion.[32] Physical examination revealed a Trendelenburg type gait favoring both sides, good range of motion of both hips with flexion to 90 degrees with pain complaints but no restrictions, 4/5 hip flexion strength bilaterally, 5/5 quad and hamstring strength, and 5/5 ankle dorsi and plantar flexion

---

[29] Tr. 619.
[30] Tr. 621, 635, 1543-56.
[31] Tr. 1552-57.
[32] Tr. 1554.

strength.[33]  It was further noted that Shaver's percutaneous incisions over the left pelvis were healed.[34]

In August of 2020, Shaver reported multiple falls given his significant pain and lack of mobility.[35]  Dr. Reid noted Shaver appeared in no acute distress, had difficulty when transitioning from sitting to standing, had 5/5 strength with hip abduction and adduction, and had no pain over the pubic symphysis.[36]  A pelvis X-ray revealed unchanged alignment and hardware without complication.[37]  Dr. Reid approved Shaver to return to work at a sedentary capacity.[38]

Two months later, Shaver reported pain throughout his left hip, pelvis, and low back with any amount of weightbearing, ambulation, standing, and sitting.[39]  Physical examination revealed no acute distress,

---

[33] Tr. 1555.
[34] *Id.*
[35] Tr. 604.
[36] *Id.*
[37] Tr. 610.
[38] Tr. 605.
[39] Tr. 611.

an antalgic gait, intact range of motion, and somewhat limited range of motion of the left hip due to pain.[40]

In November of 2021, Shaver was transported to the emergency department after he was found unconscious on the floor of a public bathroom from a suspected seizure.[41]  Shaver reported noncompliance with his medications given his financial circumstances.[42]  A brain CT revealed normal white matter attenuation and no evidence of acute ischemia.[43]  Shaver was prescribed 500 mg of Keppra and directed to follow-up with neurology.[44]

In March of 2022, Shaver appeared at WellSpan Lebanon Neurology with Dr. Robert Fuino for an evaluation of a tremor.[45]  Shaver reported concerns of Parkinson's disease due to shaking in his upper extremities when craftworking, cutting wood, and wood burning, causing him to drop objects.[46]  He further reported constant numbness in his

---

[40] *Id.*
[41] Tr. 819-20, 823.
[42] Tr. 829.
[43] Tr. 836.
[44] Tr. 834.
[45] Tr. 1682.
[46] Tr. 1682-83.

hands making it difficult to write and carry objects.[47] Dr. Fuino ruled out Parkinson's disease and indicated he did not see a tremor.[48] A few months later, Shaver was diagnosed with mild essential tremor.[49]

In May of 2022, an EMG of the upper extremities revealed chronic bilateral median neuropathies at the wrists consistent with carpal tunnel syndrome and chronic bilateral ulnar neuropathies at the elbows.[50] Shaver appeared for a neurology follow-up the next month where an examination revealed no rest tremor, a minimal postural tremor and a mild action tremor without dysmetria, no impairment of rapid alternating movements, and normal muscle tone in upper extremities.[51] Shaver noted he experiences staring episodes when he does not take his Keppra medication.[52]

In December of 2022, Shaver reported his symptoms as stable and deferred additional medication management for his tremors.[53]

---

[47] *Id.*
[48] *Id.*
[49] Tr. 2480.
[50] Tr. 2323.
[51] Tr. 2321.
[52] Tr. 2320.
[53] Tr. 2314-16.

Treatment notes documented a normal gait and movement of all extremities spontaneously without issue.[54]  An updated brain MRI and EEG were ordered, which displayed no evidence of epileptiform activity or electrographic seizure, snoring with associated bradycardia, no acute intracranial findings, and mild white matter disease of chronic microvascular ischemia.[55]

In February of 2023, Shaver presented to WellSpan Cardiology for a follow-up visit with complaints of shortness of breath, chest pain, and fatigue.[56]  Treatment notes indicated an elevated BMI and an intolerance to CPAP.[57]  A sleep study was performed, which documented a total sleep time of 342.6 minutes with a normal sleep efficiency.[58]  Shaver was diagnosed with obstructive sleep apnea and a trial of BiPAP therapy was recommended.[59]

---

[54] Tr. 2317.
[55] Tr. 2313, 2305.
[56] Tr. 3111.
[57] Tr. 3113.
[58] Tr. 2069.
[59] Tr. 2068.

In March of 2023, Shaver received a Boston scientific loop recorder to address his recurrent strokes.[60]    Treatment notes indicated no significant findings of A-fib in the months following the procedure and that Shaver remained asymptomatic.[61]    As to his seizures, Shaver remained asymptomatic without any residual seizure activity after focusing on medication compliance.[62] He further denied headaches, chest pain/palpitations, dizziness/lightheadedness, numbness/tingling, gait instability/balance issues, and any other additional complaints.[63]

It is against the backdrop of this record that an ALJ held a hearing on Shaver's disability application on October 15, 2024.[64]  Shaver and a Vocational Expert both appeared and testified at this hearing.[65] Following this hearing, on October 28, 2024, the ALJ issued a decision denying Shaver's application for disability benefits.[66]    The ALJ first concluded that Shaver had not engaged in substantial gainful activity

---

[60] Tr. 2170.

[61] Tr. 2258, 2263.

[62] Tr. 2258-59, 2263-64.

[63] Tr. 2260, 2264.

[64] Tr. 1814-32.

[65] *Id.*

[66] Tr. 1789-1806.

since his alleged onset date of September 23, 2019.[67] At Step 2 of the sequential analysis that governs disability claims, the ALJ found that Shaver suffered from severe impairments of degenerative disc disease, obesity, residual effects of cerebral vascular incident, fracture of pelvis, and seizure disorder.[68] At Step 3, the ALJ concluded that none of these impairments met or equaled the severity of a listed impairment under the Commissioner's regulations.[69]

Between Steps 3 and 4, the ALJ then concluded that Shaver:

[H]a[d] the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except can stand and/or walk four hours in an eight-hour workday; can occasionally perform postural movement except never use ladders, ropes, or scaffolds; must avoid concentrated exposure to extreme cold, loud noise, vibrations, fumes, odors, dust, gases, and poor ventilation; and avoid even moderate exposure to dangerous machinery and unprotected heights.[70]

In reaching his RFC determination, the ALJ considered the objective medical record detailed above, the medical opinion evidence, and Shaver's reported symptoms. With respect to the medical opinion

---

[67] Tr. 1791.
[68] Tr. 1792-94.
[69] Tr. 1794-95.
[70] Tr. 1795.

evidence, the ALJ considered the opinions on record. The ALJ was persuaded by the opinions of Drs. Horenstein and Lelwellyn Raymundo to the extent they suggest Shaver can perform light work with the limitations stated above.[71] The ALJ reasoned that these opinions were supported by "citation to recovery from stroke and pelvis crush injury, medication control of seizures, and examination finding of walking with and without a cane, five out of five strength in the upper extremities, and decrease in lower extremity strength."[72] The ALJ further found the opinions were consistent with the longitudinal objective clinical findings.[73]

The ALJ was partially persuaded by the opinion of Daniel Chege, NP.[74] The ALJ found Mr. Chege's opinion that the use of a cane was medically necessary unpersuasive given Mr. Chege's own examination findings and the objective medical record showing Shaver's ability to

---

[71] Tr. 80-85, 1552-57, 1801-02.
[72] Tr. 1801.
[73] *Id.*
[74] Tr. 1802.

13

walk and stand without a cane, along with the fact that no treatment provider prescribed a cane.[75]

The ALJ was not persuaded by the opinions of Dr. Vinicius Ladeira Craveiro, Katrina Karnas, PT, Dr. Joanna Deleo, Dr. Kent L. Wagner, Dr. Anthony Galdieri, and Dr. Hong Park.[76] Dr. Craveiro and Ms. Karnas opined that Shaver could return to a full range of sedentary work.[77] Similarly, Dr. Deleo opined that Shaver was limited to sedentary work with lifting and/or carrying ten pounds occasionally and frequently and standing and/or walking two hours and needing to use a cane.[78] Dr. Wagner opined that Shaver could sit, stand, and walk two hours in an eight hour day, needed a cane to stand and walk, needed to miss more than four days per month, and could rarely lift less than ten pounds.[79] The ALJ concluded these opinions were not supported by their own examination findings, and were inconsistent with the treatment records which showed "walking and standing without assistance, normal

---

[75] *Id.*

[76] Tr. 1802-03.

[77] Tr. 1550, 1785, 1802.

[78] Tr. 70-72.

[79] Tr. 779-83.

strength in the upper extremities, normal use of upper extremities, . . . improved functioning after recovery from injury[,]" and "an ability to lift twenty-two pounds from floor to knuckle, and to standing and walking fifty-five minutes at one time without difficulty."[80] The ALJ was not persuaded by the opinions of Drs. Galdieri and Park because their opinions that the evidence was insufficient to determine severity and functional limitations did not constitute medical opinions.[81]

With respect to Shaver's symptoms, the ALJ found that Shaver's statements concerning the intensity, persistence, and limiting effects of his impairments were not entirely consistent with the medical evidence.[82] Shaver testified he experiences recurrent seizures and strokes, is encroached on the left side, cannot walk without a cane or walker, is partially blind in the right eye, can only sit or stand for ten minutes at a time, and has numbness and shaking.[83] He claimed his daily lower back and side pain prevents him from sleeping and that he typically sits on

---

[80] Tr. 1802-03.
[81] Tr. 1803, 1862-63.
[82] Tr. 1796-98.
[83] Tr. 1818-20.

the couch for roughly five hours per day.[84]  Shaver further claimed he has difficulty dressing himself, shaving, and showering.[85]  As to completing household chores, Shaver testified that he cooks simple meals, cleans, does laundry, and mows the grass with a riding lawn mower.[86]

The ALJ ultimately found Shaver's testimony to be inconsistent with the objective clinical findings.[87]  The ALJ recounted the objective evidence during the alleged disability period, including unremarkable MRI imaging of the spine, radiographic studies of the hip, and EEG findings.[88]  The ALJ also noted examination findings of good range of motion and sensation in all extremities, normal reflexes and pulse rates in the lower extremities, controllable pain with over the counter medication, full strength with hip abduction and adduction, stability with right-sided symptoms, normal cardiac and pulmonary functioning.[89]  Moreover, the ALJ recognized that Shaver was not consistently observed

---

[84] Tr. 1818-19, 1822.
[85] Tr. 1823, 1825.
[86] Tr. 1825-27.
[87] Tr. 1796.
[88] Tr. 1797-98.
[89] Tr. 1797-1800.

with a cane and that he was not medically prescribed one.[90]  Ultimately,

the ALJ concluded Shaver was not as limited as he alleged.

Having made these findings, the ALJ found at Step 4 that Shaver

had no relevant past work but found at Step 5 that he could perform the

occupations of a telephone information clerk, polisher, and table

worker.[91]  Accordingly, the ALJ found that Shaver had not met the

stringent standard prescribed for disability benefits and denied his

claim.[92]

This appeal followed.  On appeal, Shaver argues that the ALJ's

decision is not supported by substantial evidence.  This case is fully

briefed and is therefore ripe for resolution.  For the reasons set forth

below, we will affirm the decision of the Commissioner.

## III.    Discussion

### A. Substantial Evidence Review – the Role of this Court

This Court's review of the Commissioner's decision to deny benefits

is limited to the question of whether the findings of the final decision-

---

[90] Tr. 1798, 1800.
[91] Tr. 1804-05.
[92] Tr. 1805.

maker are supported by substantial evidence in the record.[93]  Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."[94]   Substantial evidence means less than a preponderance of the evidence but more than a mere scintilla.[95]

A single piece of evidence is not substantial evidence if the ALJ "ignores, or fails to resolve, a conflict created by countervailing evidence."[96]  However, where there has been an adequately developed factual record, substantial evidence may be "something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent [the ALJ's decision] from being supported by substantial evidence."[97]  The court must "scrutinize

---

[93] *See* 42 U.S.C. §405(g); *Johnson v. Comm'r of Soc. Sec.*, 529 F.3d 198, 200 (3d Cir. 2008); *Ficca v. Astrue*, 901 F. Supp. 2d 533, 536 (M.D. Pa. 2012).

[94] *Pierce v. Underwood*, 487 U.S. 552, 565 (1988).

[95] *Richardson v. Perales*, 402 U.S. 389, 401 (1971).

[96] *Mason v. Shalala*, 994 F.2d 1058, 1064 (3d Cir. 1993) (quoting *Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir. 1983)) (internal quotations omitted).

[97] *Consolo v. Fed. Maritime Comm'n*, 383 U.S. 607, 620 (1966).

18

the record as a whole" to determine if the decision is supported by substantial evidence.[98]

The Supreme Court has explained the limited scope of our review, noting that "[substantial evidence] means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"[99]  Under this standard, we must look to the existing administrative record to determine if there is "'sufficient evidence' to support the agency's factual determinations."[100]  Thus, the question before us is not whether the claimant is disabled, but rather whether the Commissioner's finding that he or she is not disabled is supported by substantial evidence and was based upon a correct application of the law.[101]

---

[98] *Leslie v. Barnhart*, 304 F. Supp.2d 623, 627 (M.D. Pa. 2003).

[99] *Biestek*, 139 S. Ct. at 1154 (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)).

[100] *Id.*

[101] *See Arnold v. Colvin*, No. 3:12-CV-02417, 2014 WL 940205, at *1 (M.D. Pa. Mar. 11, 2014) ("[I]t has been held that an ALJ's errors of law denote a lack of substantial evidence") (alterations omitted); *Burton v. Schweiker*, 512 F. Supp. 913, 914 (W.D. Pa. 1981) ("The Secretary's determination as to the status of a claim requires the correct application of the law to the facts"); *see also Wright v. Sullivan*, 900 F.2d 675, 678 (3d Cir. 1990) (noting that the scope of review on legal matters is

When conducting this review, we must remain mindful that "we must not substitute our own judgment for that of the fact finder."[102] Thus, we cannot re-weigh the evidence. Instead, we must determine whether there is substantial evidence to support the ALJ's findings. In doing so, we must also determine whether the ALJ's decision meets the burden of articulation necessary to enable judicial review; that is, the ALJ must articulate the reasons for his decision.[103] This does not require the ALJ to use "magic" words, but rather the ALJ must discuss the evidence and explain the reasoning behind his or her decision with more than just conclusory statements.[104] Ultimately, the ALJ's decision must be accompanied by "a clear and satisfactory explication of the basis on which it rests."[105]

---

plenary); *Ficca*, 901 F. Supp. 2d at 536 ("[T]he court has plenary review of all legal issues . . . .").

[102] *Zirnsak v. Colvin*, 777 F.3d 607, 611 (3d Cir. 2014) (citing *Rutherford v. Barnhart*, 399 F.3d 546, 552 (3d Cir. 2005)).

[103] *Burnett v. Comm'r of Soc. Sec. Admin.*, 220 F.3d 112, 119 (3d Cir. 2000).

[104] *See Diaz v. Comm'r of Soc. Sec.*, 577 F.3d 500, 504 (3d Cir. 2009) (citations omitted).

[105] *Cotter v. Harris*, 642 F.2d 700, 704 (3d Cir. 1981).

## B. Initial Burdens of Proof, Persuasion, and Articulation for the ALJ

To receive disability benefits under the Social Security Act, a claimant must show that he or she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of not less than 12 months."[106] This requires a claimant to show a severe physical or mental impairment that precludes him or her from engaging in previous work or "any other substantial gainful work which exists in the national economy."[107]  To receive benefits under Title II of the Social Security Act, a claimant must show that he or she is under retirement age, contributed to the insurance program, and became disabled prior to the date on which he or she was last insured.[108]

---

[106] 42 U.S.C. §423(d)(1)(A); 42 U.S.C. §1382c(a)(3)(A); *see also* 20 C.F.R. §§404.1505(a), 416.905(a).
[107] 42 U.S.C. §423(d)(2)(A); 42 U.S.C. §1382c(a)(3)(B); 20 C.F.R. §§404.1505(a), 416.905(a).
[108] 42 U.S.C. §423(a); 20 C.F.R. §404.131(a).

In making this determination, the ALJ follows a five-step evaluation.[109]   The ALJ must sequentially determine whether the claimant: (1) is engaged in substantial gainful activity; (2) has a severe impairment; (3) has a severe impairment that meets or equals a listed impairment; (4) is able to do his or her past relevant work; and (5) is able to do any other work, considering his or her age, education, work experience and residual functional capacity ("RFC").[110]

Between Steps 3 and 4, the ALJ must also determine the claimant's residual functional capacity (RFC).  RFC is defined as "that which an individual is still able to do despite the limitations caused by his or her impairment(s)."[111]  In making this assessment, the ALJ must consider all the claimant's medically determinable impairments, including any non-severe impairments identified by the ALJ at step two of his or her analysis.[112]  Our review of the ALJ's determination of the plaintiff's RFC

---

[109] 20 C.F.R. §§404.1520(a), 416.920(a).

[110]20 C.F.R. §§404.1520(a)(4), 416.920(a)(4).

[111] *Burnett*, 220 F.3d at 121 (citations omitted); *see also* 20 C.F.R. § 404.1545(a)(1).

[112] 20 C.F.R. §§404.1545(a)(2), 416.945(a)(2).

is deferential, and that determination will not be set aside if it is supported by substantial evidence.[113]

The claimant bears the burden at Steps 1 through 4 to show a medically determinable impairment that prevents him or her from engaging in any past relevant work.[114]  If met, the burden then shifts to the Commissioner to show at Step 5 that there are jobs in significant numbers in the national economy that the claimant can perform consistent with the claimant's RFC, age, education, and work experience.[115]

With respect to the RFC determination, courts have followed different paths when considering the impact of medical opinion evidence on this determination.  While some courts emphasize the necessity of medical opinion evidence to craft a claimant's RFC, other courts have taken the approach that "[t]here is no legal requirement that a physician have made the particular findings that an ALJ adopts in the course of

---

[113] *Burns v. Barnhart,* 312 F.3d 113, 129 (3d Cir. 2002).
[114] *Mason*, 994 F.2d at 1064.
[115] 20 C.F.R. §§404.1512(f), 416.912(f); *Mason*, 994 F.2d at 1064.

determining an RFC."[116]    Additionally, in cases that involve no credible

medical opinion evidence, courts have held that "the proposition that an

ALJ must always base his RFC on a medical opinion from a physician is

misguided."[117]

Given these differing approaches, we must evaluate the factual

context underlying an ALJ's decision.    Cases that emphasize the

importance of medical opinion support for an RFC assessment typically

arise in the factual setting where well-supported medical sources have

found limitations to support a disability claim, but an ALJ has rejected

the medical opinion based upon an assessment of other evidence.[118]

These cases simply restate the notion that medical opinions are entitled

to careful consideration when making a disability determination.  On the

other hand, when no medical opinion supports a disability finding or

when an ALJ relies upon other evidence to fashion an RFC, courts have

routinely sustained the ALJ's exercise of independent judgment based

---

[116] *Titterington v. Barnhart*, 174 F. App'x 6, 11 (3d Cir. 2006); *see also Biller v. Acting Comm'r of Soc. Sec.,* 962 F. Supp. 2d 761, 778–79 (W.D. Pa. 2013).
[117] *Cummings v. Colvin*, 129 F. Supp. 3d 209, 214–15 (W.D. Pa. 2015).
[118] *Biller*, 962 F. Supp. 2d at 778–79.

24

upon all the facts and evidence.[119]     Ultimately, it is our task to determine, considering the entire record, whether the RFC determination is supported by substantial evidence.[120]

## C. Legal Benchmarks for the ALJ's Assessment of a Claimant's Alleged Symptoms

When evaluating lay testimony regarding a claimant's reported degree of pain and disability, the ALJ must make credibility determinations.[121]  Our review of those determinations is deferential.[122] However, it is incumbent upon the ALJ to "specifically identify and explain what evidence he found not credible and why he found it not credible."[123]  An ALJ should give great weight to a claimant's testimony "only when it is supported by competent medical evidence."[124]  As the Third Circuit has noted, while "statements of the individual concerning

---

[119] *See Titterington*, 174 F. App'x 6; *Cummings,* 129 F. Supp. 3d at 214–15.
[120] *Burns,* 312 F.3d 113.
[121] *See Diaz,* 577 F.3d at 506.
[122] *Id.*
[123] *Zirnsak v. Colvin*, 777 F.3d 607, 612 (3d Cir. 2014) (citations omitted).
[124] *McKean v. Colvin*, 150 F. Supp. 3d 406, 415–16 (M.D. Pa. 2015) (citations omitted).

his or her symptoms must be carefully considered, the ALJ is not required to credit them."[125]

The Social Security Rulings and Regulations provide a framework for evaluating the severity of a claimant's reported symptoms.[126] Thus, the ALJ must follow a two-step process: first, the ALJ must determine whether a medically determinable impairment could cause the symptoms alleged; and second, the ALJ must evaluate the alleged symptoms considering the entire administrative record.[127]

Symptoms such as pain or fatigue will be considered to affect a claimant's ability to perform work activities only if medical signs or laboratory findings establish the presence of a medically determinable impairment that could reasonably be expected to produce the alleged symptoms.[128] During the second step of this assessment, the ALJ must determine whether the claimant's statements regarding the intensity,

---

[125] *Chandler v. Comm'r of Soc. Sec.,* 667 F.3d 356, 363 (3d. Cir. 2011) (referencing 20 C.F.R. §404.1529(a) ("statements about your pain or other symptoms will not alone establish that you are disabled").
[126] 20 C.F.R. §§ 404.1529, 416.929; SSR 16–3p.
[127] SSR 16-3p.
[128] 20 C.F.R. §§ 404.1529(b), 416.929(b); SSR 16–3p.

persistence, or limiting effects of his or her symptoms are substantiated considering the entire case record.[129]  This includes, but is not limited to, medical signs and laboratory findings; diagnoses; medical opinions provided by treating or examining sources and other medical sources; and information regarding the claimant's symptoms and how they affect his or her ability to work.[130]

The Social Security Administration recognizes that individuals may be limited by their symptoms to a greater or lesser extent than other individuals with the same medical impairments, signs, and laboratory findings.[131]  Thus, to assist in the evaluation of a claimant's subjective symptoms, the Social Security Regulations set forth seven factors that may be relevant to the assessment of the claimant's alleged symptoms.[132] These factors include: the claimant's daily activities; the "location, duration, frequency, and intensity" of the claimant's pain or symptoms; the type, dosage, and effectiveness of medications; treatment other than

---

[129] 20 C.F.R. § 404.1529(c), 416.929(c); SSR 16–3p.
[130] *Id.*
[131] SSR 16-3p.
[132] 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3).

medications; and other factors regarding the claimant's functional limitations.[133]

### D. The ALJ's Decision is Supported by Substantial Evidence.

Our review of the ALJ's decision denying an application for benefits is significantly deferential.  Our task is simply to determine whether the ALJ's decision is supported by substantial evidence in the record; that is "only— 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"[134]  Judged against this deferential standard of review, we conclude that substantial evidence supported the ALJ's decision in this case.

Shaver first argues that the ALJ failed to identify a significant number of jobs that he can perform.[135]  The ALJ found that Shaver could perform three occupations: telephone information clerk (DOT 237.367-046), polisher (DOT 713.684-018), and table worker (DOT 739.687-182).[136]  Shaver claims the job of a telephone information clerk is

---

[133] *Id.*

[134] *Biestek*, 139 S. Ct. at 1154.

[135] Doc. 16 at 7-9.

[136] Tr. 1804-05.

outdated, the job of a table worker is not included in the Occupational Information Network ("O*NET"), and the job of a polisher has only 6,000 existing jobs.[137]

Specifically, Shaver relies on *Feeley v. Comm'r of Soc. Sec.*[138] in arguing that a telephone information clerk is outdated due to technological advances.[139] While the nonbinding caselaw recognized the "quaint" nature of the job, it further noted that the job still remains, and that remand is not appropriate where only "one of three job categories is questionable."[140] Accordingly, we find this argument without merit.

Shaver also relies on O*NET in alleging that the job of a table worker is not sufficient. He claims the job is not included in O*NET nor is there an O*NET equivalent job.[141] However, courts in our circuit "have been hesitant to reject the testimony of Vocational Experts relying upon the DOT in favor of the descriptions on O*NET, given the fact that 'Social Security Ruling 00-4P sets forth that the relevant inquiry is whether VE

---

[137] Doc. 16 at 7-9.

[138] No. 1404970, 2015 WL 3505512, at *10 (D.N.J. June 3, 2015).

[139] Doc. 16 at 7-8.

[140] *Feeley*, 2015 WL 3505512, at *10-11.

[141] Doc. 16 at 8.

testimony is consistent with the DOT.'"[142]  "[T]he regulations simply do not require a [Vocational Expert's] testimony to be consistent with O*Net."[143]  We agree with this body of caselaw and conclude that the ALJ fulfilled his requirement under the controlling regulations.

As to the job of a polisher, "there is no precise estimate for what constitutes 'significant numbers' of jobs under the Social Security Act."[144] Moreover, such determination is not made by viewing the number of available positions for an individual job.[145]  Here, the ALJ identified three jobs that collectively provide 21,000 jobs nationally.[146]  We find this satisfies the Commissioner's requirement to identify jobs that exist in significant numbers in the national economy.[147]

Shaver also challenges the ALJ's RFC findings, arguing the ALJ failed to address his need to lie down during the day.  In support of this

---

[142] *Pollock v. O'Malley*, No. 1:22-cv-1856, 2024 WL 4803530, at *19 (M.D. Pa. Nov. 15, 2024) (collecting cases).

[143] *Id.* at *20.

[144] *Young v. Astrue*, 519 F. App'x 769, 772 (3d Cir. 2013).

[145] *See id.*

[146] Tr. 1805.

[147] *See Young*, 519 F. App'x at 772 (finding that 20,000 available jobs sufficient to establish work exists in significant numbers).

argument, Shaver points to record evidence that he contends supports abnormal physical findings.   However, the ALJ explicitly considered Shaver's testimony, including that he has difficulty sleeping and naps once or twice daily, but found that Shaver was not as limited as he alleged.[148]  In doing so, the ALJ recounted the medical evidence, which did not support a finding of significant fatigue during the day resulting in a need to nap.[149]   While Shaver seemingly challenges the ALJ's credibility determination, we are not permitted at this stage to reweigh the evidence, and instead must simply determine whether the ALJ's decision was supported by "substantial evidence."[150]   Here, we conclude that the ALJ's RFC findings is supported by substantial evidence.

Shaver further challenges the ALJ's assessment of his obesity in accordance with SSR 19-2p.[151]  The Third Circuit has explained that the ALJ need not "use particular language or adhere to a particular format in conducting his analysis" of a claimant's obesity.[152]  Rather, so long as

---

[148] Tr. 1796.

[149] Tr. 1800.

[150] *Chandler*, 667 F.3d at 359; *Biestek*, 139 S. Ct. at 1154.

[151] Doc. 16 at 11-15.

[152] *Diaz,* 577 F.3d at 504 (citations omitted).

the ALJ "meaningfully consider[s] the effect of a claimant's obesity, individually and in combination with her impairments, on her workplace function at step three and at every subsequent step[,]" a remand is not required.[153]  Here, the ALJ acknowledged obesity as a severe impairment and discussed this impairment at Step 3, explicitly noting that he considered SSR 19-2p regarding the claimant's obesity and any impact it has on his co-existing impairments in determining whether it met or medically equaled a listing.[154]  In determining Shaver's RFC, the ALJ recounted the medical records that documented Shaver's obesity, referring to Shaver's BMI during the relevant period.[155]  This evidence was discussed in conjunction with the claimant's physical examination findings, both normal and abnormal.[156]  Shaver fails to point to evidence showing that his obesity had more than a minimal effect on his abilities, and instead generally refers to his physical impairments and his

---

[153] *Id.* at 504; *see Woodson v. Comm'r Soc. Sec.*, 661 F. App'x 762, 765 (3d Cir. 2016); *Cooper v. Comm'r of Soc. Sec.*, 563 F. App'x 904, 911 (3d Cir. 2014).
[154] Tr. 1792, 1795.
[155] Tr. 1797-98
[156] Tr. 1796-1801.

complaints that his pain was worse with prolonged sitting, standing, and walking. But as we have noted, the ALJ explained why he found Shaver's testimony not entirely consistent with the medical evidence. Ultimately, we conclude that the ALJ's assessment of Shaver's obesity is supported by substantial evidence.

Shaver also contends that the ALJ erred in assessing his subjective testimony, in that the ALJ ignored his "qualifications" as to how he carried out daily activities.[157] However, the ALJ recounted the medical evidence, which included both abnormal and objectively unremarkable physical findings during the relevant period. He discussed these objective findings, coupled with Shaver's activities of daily living, his testimony, and the fact that he improved with treatment. The ALJ ultimately determined that Shaver's "admitted abilities provided support, in part, for the residual functional capacity set forth above and are quite inconsistent with the claimant's allegations of totally debilitating impairments."[158]

---

[157] Doc. 16 at 16-19.
[158] Tr. 1800-01.

Lastly, Shaver argues the ALJ erred in failing to consider his consistent work history because it constituted favorable evidence that required consideration.[159]  While the ALJ did not discuss the claimant's work history, Shaver fails to identify how prejudice inured from such alleged error.  Social Security appeals are subject to harmless error analysis.[160]  Under the harmless error analysis, a remand is warranted only if the error "prejudices a party's 'substantial rights'"; that is, if the error "likely affects the outcome of the proceeding, . . ."[161]  Shaver's argument fails to demonstrate prejudice occurred, and so, even assuming *arguendo* that it was an error, we hold now it was harmless.

Given that the ALJ considered all the evidence and adequately explained the decision for including or discounting certain limitations as established by the evidence, we find no error with the decision. Therefore, under the deferential standard of review that applies to appeals of Social Security disability determinations, we conclude that

---

[159] Doc. 16 at 19-20.

[160] *See Holloman v. Comm'r Soc. Sec.*, 639 F. App'x 810, 814 (3d Cir. 2016).

[161] *Hyer v. Colvin*, 72 F. Supp. 3d 479, 494 (D. Del. 2014).

substantial evidence supported the ALJ's evaluation of this case, and this decision will be affirmed.

## IV. <u>Conclusion</u>

For the foregoing reasons, the decision of the Commissioner in this case will be affirmed, and the plaintiff's appeal denied.

An appropriate order follows.

Submitted this 3rd day of March 2026.


<u>*s/ Daryl F. Bloom*</u>
Daryl F. Bloom
Chief United States Magistrate Judge